# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| SHERI ARMSTRONG, | : | |
| Plaintiff, | : | |
| | | Case No. 3:07CV216 |
| vs. | : | |
| | | District Judge Walter H. Rice |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

---

## REPORT AND RECOMMENDATIONS[1]

---

## I.     INTRODUCTION

For many years, Plaintiff Sheri Armstrong worked in the airline industry as a reservation sales agent. (Tr. 65). She began suffering chronic fatigue in 1996 and, consequently, she worked part time from 1996 to 2001. (Tr. 65, 76). Although she was laid off her job in October 2001, she asserts that her health problems precluded her from returning to work after this time. (Tr. 51, 64-65, 464-65). As a result, she sought financial assistance from the Social Security Administration by applying for Disability Insurance Benefits (DIB).

After various administrative proceedings, Administrative Law Judge (ALJ) Melvin

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

A. Padilla denied Plaintiff's DIB application, concluding that her impairments did not constitute a "disability" within the meaning of the Social Security Act. (Tr. 26). ALJ Padilla's nondisability decision later became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #5), the Commissioner's Memorandum in Opposition (Doc. #6), Plaintiff's Reply (Doc #7), the administrative record, and the record as a whole.

Plaintiff seeks a reversal of the ALJ's decision and a judicial award of benefits. The Commissioner seeks an Order affirming the ALJ's decision.

## II. BACKGROUND

At the time of the ALJ's decision, Plaintiff's age (49) placed her in the category of a "younger individual" for purposes of resolving her DIB application. *See* 20 C.F.R. §404.1563( c ); *see also* Doc. #5 at 2. She has a high school education and has taken some college courses. (Tr. 70, 81).

Plaintiff claims that she has been under a disability since October 19, 2001.

Plaintiff testified during the ALJ's hearing that she is not able to sit or stand for very long periods because she "get[s] stressed," which causes her to get sick. She describes her symptoms as similar to morning sickness and testified, "if you've ever had the flu, that's on my good days." (Tr. 465). Plaintiff can stand or sit about 15-20 minutes

2

before needing a break. (Tr. 471). Plaintiff stated that she has "really low blood pressure" and that she gets very dizzy when she sits or with even minor activity (like doing the laundry). (Tr. 465, 471). When she climbs stairs, she gets out of breath and her chest hurts. She is not dizzy when she is lying down. (Tr. 471). She must lie down five or six times during the day (for about ten minutes each) because she gets dizzy and nauseous. (Tr. 475-76). Plaintiff estimated that she can lift about 5 pounds. (Tr. 471).

Plaintiff testified that she has pain everywhere in her body and that it is like a connective tissue disorder. (Tr. 466). Her pain is most severe in her shoulders and back. *Id*. Her pain is sharp, sometimes like someone is stabbing her, and she feels pain "[p]retty much constantly." *Id*. She received treatment from a chiropractor for a while but did not feel it was helpful. *Id*.

Plaintiff sees her primary care physician, Dr. Ronald Kahn and her immunologists, Dr. Aliya Kahn approximately every three months. (Tr. 467). She sees an eye doctor, Dr. Kunsih, every six months for treatment of borderline glaucoma, pigmentary diversion, and dry eyes. (Tr. 468).

Plaintiff testified that she has seen psychiatrists and counselors since age 20. (Tr. 468). She suffers from depression, causing her to feel useless and embarrassed because of her health problems. (Tr. 469). She started seeing psychologist, Dr. Jasmine Edwards, two months before the ALJ's hearing. (Tr. 468).

The parties have provided detailed and informative descriptions of Armstrong's medical records supported with many specific citations to evidence of record. *See* Doc.

3

#5 at 4-7; Doc. #6 at 5-9 and the administrative record.  A few highlights of these records will help frame further review.

Plaintiff's long-term treating family physician Dr. Ronald Kahn wrote a letter in July 2006 stating that Plaintiff "does possess and does medically reach all qualifications that would give her this diagnosis of chronic fatigue syndrome.  This patient has had definite symptomatology since 1996."  (Tr. 285).  Dr. Kahn listed eleven symptoms that Plaintiff was experiencing at the time.  (Tr. 285).  He further explained that from 1996 through 2000, he treated Plaintiff for recurring sore throats, sinus infections, and fatigue.  *Id*.  According to Dr. Kahn, Plaintiff began developing low grade fevers in 2000.  (Tr. 286).

Testing performed by Dr. Kahn showed an elevated Anti Nuclear Antibody (ANA) titer, potentially indicating the presence of an infectious disease or disorder.  *See* Tr. 285-86; *see also* Taber's Cyclopedic Medical Dictionary at 134, 2108 (19th Ed. 2001).  Dr. Kahn noted a definitive diagnosis:  "fever of unknown origin with a positive ANA."  (Tr. 286).

Dr. Kahn referred Plaintiff first to a rheumatologist (Dr. Schriber), then to an infectious disease specialist (Dr. Wunderlich), then to a rheumatologist/pulmonologist (Dr. Aliya Kahn).  (Tr. 285-87).  Dr. Kahn's July 2004 letter identifies the various medical tests these physicians performed along with the results of those tests.  (Tr. 285-86).

Dr. Kahn's letter next describes Plaintiff's ongoing symptoms, including, but not

4

limited to, chronic fatigue, low grade fever, sore throats, generalized muscle weakness,

increased amounts of unrefreshed sleep, intermittent confusion, and "some ongoing

depression secondary to the chronicity of the above symptomalogy." (Tr. 287). Then,

after describing the guidelines established by the Center for Disease Control in Atlanta

for diagnosing chronic fatigue syndrome, Dr. Kahn explained:

> In Ms. Armstrong's case, she fulfilled the following symptoms: (1) she has had low grade fever; (2) she has had sore throats; (3) she has generalized muscle weakness; (4) she has had myalgias; (5) she has had headaches; (6) she has had migratory arthralgias; (7) she has had sleep disturbances; (8) she has had some neuro/psychological complaints including forgetfulness, confusion, difficulty in concentration and depression. Therefore, this patient fulfills having at least eight of the nine symptoms. She then needs to possess two out of three physical signs. The patient has (1) a low grade fever; and (2) pharyngitis, fulfilling two out of three physical signs.
>
> Therefore, by the strictest criteria established by The Center for Disease Control in Atlanta, this patient, in my opinion, based on the criteria for establishing disease in a person, does meet the full criteria for giving the patient the diagnosis of Chronic Fatigue Syndrome....

(Tr. 287-297A).

In July 2003, Dr. Kahn completed a "Chronic Fatigue Syndrome Residual

Functional Capacity Questionnaire, indicating his opinions that Plaintiff could not

perform the exertional requirements of sedentary work or low stress work due to chronic

fatigue syndrome. (Tr. 292-96).

Psychologist Richard Bromberg examined Plaintiff in January 2003 at the request

of the Ohio Bureau of Disability Determination. (Tr. 190-94). Dr. Bromberg diagnosed

Plaintiff with dysthymic disorder but found that her "symptoms do not appear to interfere

with her daily functioning." (Tr. 193). Dr. Bromberg found that Plaintiff "demonstrates a mild Symptom Severity with a GAF of 68, as indicated by 'mental confusion,' depression, occasional anger and sadness, and a history of suicidal behavior/ideation...."[2] (Tr. 193). As to Plaintiff's mental work abilities, Dr. Bromberg opined that she has a mild impairment in "the areas of relating, comprehension, attention, concentration, persistence and pace." (Tr. 194). He further believed that Plaintiff was mildly impaired in her ability to remember and withstand the stress of daily work activity. (Tr. 194). But, according to Dr. Bromberg, Plaintiff's mental work-related abilities were not otherwise impaired. *Id.*

## III.   ADMINISTRATIVE REVIEW

The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity. *See* 42 U.S.C. §423(d)(1)(A); *see also Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).[3]

Social Security Regulations require ALJs to resolve whether a claimant is under a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R.

---

[2] He assessed Cunningham's GAF at 42, an assessment generally describing a person with "serious symptoms ... or serious impairment in occupational, social, or school functioning." DSM-IV-TR at 34.

[3] Other DIB eligibility requirements are not at issue in this case. *See* 42 U.S.C. §423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70.

§404.1520(a)(4). Although a dispositive finding at any Step terminates the ALJ's review,

*see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the

sequential evaluation answers five questions:

> 1.  Is the claimant engaged in substantial gainful activity?
>
> 2.  Does the claimant suffer from one or more severe impairments?
>
> 3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4.  Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279

F.3d 348, 354 (6th Cir. 2001).

In the present case the ALJ found at Step 2 that Plaintiff had the severe

impairment of dysthymic disorder and no other severe impairment.[4] (Tr. 25). The ALJ

determined at Step 3 that Plaintiff did not have an impairment that meets or equals one in

the Listings. (Tr. 25).

At Step 4 the ALJ found:

> The claimant has the residual functional capacity to perform the

---

[4] "The essential feature of Dysthymic Disorder is a chronically depressed mood that occurs for most of the day more days than not for at least 2 years...." *Kornecky v. Commissioner of Social Security*, 167 Fed.Appx. 496, 504 n.8 (6th Cir. 2006)(citing Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at 376-77).

physical requirements of work at all exertional levels with the following
non-exertional restrictions: inside work in a temperature-controlled
environment and low stress jobs that are not fast paced and have no
production quotas (dealing with the public is not precluded).

(Tr. 25).  The ALJ further found at Step 4 that Plaintiff could not perform her past

relevant work.  *Id.*

The ALJ's assessment of Plaintiff's RFC, along with the ALJ's findings

throughout his sequential evaluation, led him to conclude that Plaintiff was not under a

disability and thus not eligible to receive DIB.  (Tr. 13-26).

## IV.    JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines:  whether substantial

evidence in the administrative record supports the ALJ's factual findings and whether the

ALJ "applied the correct legal criteria."  *Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742,

745-46 (6th Cir. 2007).

"Substantial evidence is defined as 'such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'"  *Bowen*, 478 F3d at 746 (citing in part

*Richardson v. Perales*, 402 U.S. 389, 401 (1977)).  It consists of "'more than a scintilla of

evidence but less than a preponderance...'"  *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234,

241 (6th Cir. 2007).

Judicial review of the administrative record and the ALJ's decision is not *de novo*.

*See Cutlip v. Secretary of Health and Human Servs.*, 25 F3d 284, 286 (6th Cir. 1994).

And the required analysis is not driven by whether the Court agrees or disagrees with an

ALJ's factual findings or by whether the administrative record contains evidence contrary to those findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld "as long as they are supported by substantial evidence." *Rogers*, 486 F.3d at 241 (citing *Her*, 203 F.3d at 389-90).

The second line of judicial inquiry – reviewing the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *See Bowen*, 478 F3d at 746. This occurs, for example, when the ALJ has failed to follow the Commissioner's "own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing in part *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 546-47 (6th Cir.2004)).

## V. DISCUSSION

### A. <u>The Parties' Contentions</u>

Plaintiff contends that the ALJ improperly rejected the opinion of her treating physician Dr. Ronald Kahn by not analyzing it as was required by the Commissioner regulation, 20 C.F.R. §404.1527, Social Security Ruling 96-2p, and *Wilson v. Commissioner of Social Security*, 378 F.3d 541 (6th Cir. 2004). Plaintiff further contends that the ALJ erred by not properly applying Social Security Ruling 99-2p, the Commissioner's Ruling addressing chronic fatigue syndrome.

The Commissioner argues that the ALJ articulated sound reasons for rejecting Dr.

Ronald Kahn's opinions, specifically because his opinions were not confirmed by the specialist treating physicians, Drs. Schriber, Wunderlich, and Aliya Kahn.  (Doc. #6 at 10-12).  The Commissioner further contends that the factors of 20 C.F.R. §404.1527 do not automatically favor Plaintiff's assertions.  And, the Commissioner maintains that the ALJ provided good reasons for rejecting Dr. Ronald Kahn's opinion.  (Doc. #6 at 13-18). The Commissioner concludes that the ALJ's decision is supported by substantial evidence.

**B.      Analysis**

**1.**

Resolving Plaintiff's contentions begins with the standards used by ALJs to weigh the various medical source opinions in the administrative record.

The treating physician rule, when applicable, requires ALJs to place controlling weight on a treating physician's opinion rather than favoring the opinion of a nonexamining medical advisor, or an examining physician who saw a claimant only once, or a medical advisor who testified before the ALJ.  *Wilson*, 378 F.3d at 544; *see Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1054 (6th Cir. 1983); *see also* 20 C.F.R. §404.1527(d)(2), (e), (f).  A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and if it is not inconsistent with other substantial evidence of record.  *Wilson*, 378 F.3d at 544; *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997); *see also* 20

C.F.R. §404.1527(d)(2).

If a treating physician's opinion is not given controlling weight, then it must be weighed against other medical source opinions under a number of factors set forth in the Commissioner's Regulations – "namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. §404.1527(d)(2)).

In general, more weight is given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources. *See* 20 C.F.R. §404.1527(d)(1). However, the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight. This occurs because the Commissioner views nonexamining sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p. Consequently, the opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization. *See* 20 C.F.R. §404.1572(d), (f).

**2.**

The ALJ discussed the Commissioner's Ruling 99-2p, concerning chronic fatigue syndrome. *See* Tr. 18-19. In doing so, the ALJ correctly recognized the following:

11

> Chronic fatigue syndrome (CFS) is a systemic disorder consisting of a complex of symptoms that may vary in incidence, duration, and severity. It is characterized in part by prolonged fatigue that lasts six months or more, and that results in substantial reduction in previous levels of occupational, educational, social, or personal activities. In accordance with the criteria established by the Center for Disease Control (CDC), a physician should make a diagnosis of CFS 'only after alternative medical and psychiatric causes of chronic fatiguing illness have been excluded....'

(Tr. 18)(quoting Soc. Sec. Ruling 99-2p, 1999 WL 271569 at *1). Ruling 99-2p further explains:

> This Ruling explains that CFS, when accompanied by appropriate medical signs or laboratory findings, is a medically determinable impairment that can be the basis for a finding of 'disability.'...

1999 WL 271569 at *1. After the ALJ further discussed Ruling 99-2p, he turned to Dr. Ronald Kahn's opinions.

The ALJ rejected Dr. Kahn's opinions because the three specialists of record (Drs. Schriber, Wunderlich, and Aliya Khan) did not diagnose Plaintiff with chronic fatigue syndrome. (Tr. 20). The ALJ discussed each specialist's diagnosis and concluded, "None of those specialists indicated serious symptoms or any acute condition." *Id*. The ALJ further reasoned that Dr. Kahn made "some general statements about her symptoms" but "did not point to specific findings meeting the diagnostic procedures and criteria (listed on a diagnostic criteria sheet that he enclosed with his assessment)." *Id*. The ALJ then described certain isolated portions of these physicians' records as further reasons to reject Dr. Kahn's opinions, *see* Tr. 20-21, the ALJ wrote:

> It may be that the claimant has chronic fatigue syndrome, however, even if she does, the next issue is severity of the condition. The evidence

12

> overall does not reveal such severity of symptoms objectively that they can
> be shown to significantly interfere with her ability to work.  Dr. Ronald
> Kahn's (the family doctor) summary of the evidence at Exhibit 19F is
> mainly retrospective to well before the alleged onset date, and the evidence
> since then shows that relatively mild medications such as Naproxyn and
> Tylenol control her symptoms.

(Tr. 21).

The ALJ did not cite or separately mention the treating physician rule or its two

required elements at any point in his decision.  He likewise did not cite to the Regulation

describing the treating physician rule, 20 C.F.R. §404.1527(d)(2), or to any case or Social

Security Ruling describing the legal standards applicable to evaluating medical source

opinions.  *See* Tr. 13-24.  Absent some language identifying the controlling legal criteria

or a citation to the controlling Regulation – neither of which the ALJ provided, *see id*. –

the ALJ's decision must be further studied to determine what legal standards he applied

when evaluating the medical source opinions.

Doing so in this case reveals no indication that the ALJ applied the two-step

evaluation procedure to the opinions provided by Plaintiff's long-term treating physician,

Dr. Kahn.  Social Security Ruling 96-2p explains the mandatary nature of this two-step

procedure as follows:

> Adjudicators must remember that a finding that a treating source is
> not well supported by medically acceptable clinical and laboratory
> diagnostic techniques or is inconsistent with the other substantial evidence
> in the case record means only that it is not entitled to 'controlling weight,'
> not that the opinion must be rejected.  Treating source medical opinions
> must still be weighed using all of the factors provided in 20 C.F.R. 404.152.
> In many cases, a treating source's medical opinion will be entitled to the
> greatest weight and should be adopted, even if it does not meet the test for

13

controlling weight.

Social Security Ruling 96-2p, 1996 WL 374188 at *4.  The most that can be gleaned in the Commissioner's favor from the ALJ's decision is that he applied isolated regulatory factors to Dr. Kahn's opinions.  This is seen in the ALJ's rejection of Dr. Kahn's opinions because three other physicians did not diagnose Plaintiff with chronic fatigue syndrome, as Dr. Kahn had.  *See* Tr. 20-21.  With the absence of another diagnosis thus emphasized, the ALJ turned to selected notes or indications in the three other physician's records to reject Dr. Khan's opinions.  *See id.*  This analytical approach does not comply with the mandatory two-step weighing procedure dictated by the Regulations, 20 C.F.R. §404.1527(d)(2)-(5), and by Social Security Ruling 96-2p.  As the United States Court of Appeals for the Sixth Circuit recently emphasized – even when the treating physician rule does not apply, "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding."  *Rogers*, 486 F.3d at 242.

Contrary to the Commissioner's contentions that the ALJ provided good reasons for rejecting Dr. Kahn's opinions, the ALJ's isolated consideration of certain regulatory factors, rather than the mandatory two-step weighing procedure, deprived the ALJ's decision of a good explanation of the reasons why he rejected the opinions of treating physician Dr. Kahn.  *See also Rogers*, 486 F.3d at 242.  This was no minor deficiency in the decision given the rationale underlying the reason-giving requirement:

The requirement of reason-giving exists, in part, to let claimants

14

understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she [or he] is not, unless some reasons for the agency's decision is supplied.... <u>The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule</u>.

*Wilson*, 378 F.3d at 544-45 (emphasis added)(citations and internal punctuation omitted).

Even if it is assumed, in the Commissioner's favor, that the ALJ applied the correct legal criteria to Dr. Kahn's opinions, the ALJ erred by selecting only isolated notes or indications in the other physicians' records that tended to support the ALJ's non-disability finding.  For example, the ALJ explained that Plaintiff's "low grade fevers are not objectively documented by medical sources, and she was inconsistent in her reports to Dr. Wunderlich, even reporting at times that she no longer had elevated temperatures at one point."  (Tr. Tr. 20).  Dr. Wunderlich's records, however, reflect far different information.  Dr. Wunderlich's records reflect Plaintiff had low grade fevers on May 5, 2001 (99.0°), March 9, 2004 (99.1°), March 24, 2004 (99.5°), May 5, 2004 (99.9°), April 9, 2004 (99.0°), August 31, 2004 (99.4°).  (Tr. 395, 397, 399, 402, 405, 414).  Although Dr. Wunderlich noted on February 5, 2001 that Plaintiff "has had no fevers," he also noted to the contrary – on that same date – that Plaintiff "gives a history of fevers since summertime between 99° and 100°."  (Tr. 413).  Dr. Wunderlich also recorded a temperature of 99.0°, a slight fever tending to support Plaintiff's report of history of similar temperatures since summertime.  *See id*.  In contrast to the ALJ's finding, Dr. Wunderlich's records reveal that Plaintiff consistently reported her low grade fevers to

15

Dr. Wunderlich, who repeatedly assessed her as suffering from low grade fever. *See* Tr. 395-96, 398-99, 402, 404, 406, 409, 411, 413. The ALJ therefore erred by selecting an isolated note from Dr. Wunderlich's report to reject or minimize the significance of Plaintiff's history of chronic low grade fevers. *Cf. Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000)("ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."); *cf. also Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984); *Kuleszo v. Barnhart*, 232 F.Supp.2d 44, 57 (S.D.N.Y. 2002).

The ALJ also relied on Dr. Schriber's opinions that Plaintiff's low grade fevers were insignificant. (Tr. 20). The ALJ erred, however, because he thought Dr. Schriber provided his opinion in November 2004, *see* Tr. 15, when Dr. Schriber's opinion was dated November 14, 2000 (Tr. 187). This incorrect date is significant because it means that the ALJ failed to consider that Dr. Schriber reached his opinions about four years before Dr. Kahn provided his opinions in July 2004, and that Dr. Schriber did not have the bulk of objective medical test results available to Dr. Kahn in July 2004.

The ALJ, moreover, credited Dr. Schriber's November 2000 opinion regarding the insignificance of Plaintiff's low grade fevers over Dr. Kahn's much more detailed and thorough one, *cf.* Tr. 187 *with* Tr. 284-287A, without evaluating Dr. Schriber's opinion under any regulatory factor. *See* Tr. 15, 20-21. This constituted an error of law because the Regulations required the ALJ to evaluate Dr. Schriber's opinions under the well-known factors, supportability, consistency, specialization, etc. *See* 20 C.F.R. §404.1527(d) ("we consider all of the following factors in deciding the weight to give any

16

medical opinion....").

In addition, substantial evidence does not support the ALJ's finding that Dr. Kahn's diagnosis of chronic fatigue syndrome "is not well supported by appropriate evaluation and procedures specific to diagnosing that condition."  (Tr. 20).  Even a cursory reading of Dr. Kahn's report reveals that he set out the specific diagnostic criteria he used – and used by the Center for Disease Control in Atlanta. (Tr. 287-287A).  And, after reviewing the information provided by the specialists, Dr. Kahn specified the findings he believed supported his diagnosis of chronic fatigue syndrome.  *See* Tr.  286-287(A).  The form Dr. Kahn completed contains specific explanations in support of his opinions about the Plaintiff's work limitation.  *See* Tr. 292-95.

The Commissioner, finding no error in the ALJ's decision, does not specifically or alternatively argue that the ALJ's errors were harmless.  Still, the Commissioner provides an analysis of the regulatory factors favoring Dr. Kahn's opinions and those factors contrary to his opinions.  *See* Doc. #6 at 13-18.  Whether or not the Commissioner has correctly applied the factors to the evidence, the Commissioner's arguments present the type of evaluation of these medical source opinions that is missing from the ALJ's decision.  The harmless error issue, then, is whether the ALJ's decision, the evidence of record, or the Commissioner's arguments provide a sufficient basis for overlooking the ALJ's errors. *See Bowen*, 478 F.3d at 747-48; *Wilson*, 378 F.3d at 546-47.

It is highly doubtful that the Commissioner's *post-hoc* application of the required regulatory factors can be the sole basis to affirm an ALJ's decision when the ALJ has

17

failed to weigh the treating and non-treating medical sources' opinions as required by the

Regulations.  As explained in *Wilson*,

> A court cannot excuse the denial of a mandatory procedural requirement protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely.  '[A] procedural error is not made harmless simply because the [aggrieved party] appears to have had little chance of success on the merits anyway.'  To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with §1527(d)(2), would afford the Commissioner the ability to violate the regulation with impunity and render the protections promised therein illusory.  The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to 'set aside agency action ... found to be ... without observance of procedure required by law.'

*Wilson*, 378 F.3d at 546 (internal citations omitted).

The ALJ's errors when evaluating Dr. Kahn's opinions were not harmless due to

his explanation and in the presence of supporting objective evidence.  Although the Sixth

Circuit has left open the issue of whether a *de minimis* violation of the procedural

requirements of §404.1527(d)(2) can constitute harmless error, a review of Dr. Kahn's

detailed report does not reveal that his opinions are "so patently deficient that the

Commissioner could not possibly credit" them...  *Wilson*, 378 F.3d at 547.  Consequently,

the ALJ's errors were not harmless.  *See Bowen*, 478 F.3d at 747-48; *Wilson*, 378 F.3d at

546-47.

Accordingly, for all the above reasons, Armstrong's Statement of Errors is well

taken.

18

## VI.    REMAND FOR PAYMENT OF BENEFITS IS WARRANTED

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits.  Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991); *see Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is warranted in the present case, because the opinions provided by Plaintiff's long-term physician Dr. Kahn are uncontradicted by almost all the other medical sources of record.  The only contrary opinion of record was provided by Dr. Schriber through his conclusion in November 2000 that Plaintiff did not need further treatment, and in his later opinion in January 2003 that Plaintiff does not "meet any of the Listings for disability."  (Tr. 186).  Dr. Schriber's very brief January 2003 opinion is unsupported by any analysis and is conclusory.  *See* Tr. 186.  Dr. Schriber's report also provides no specific probative information contrary to Dr. Kahn's opinions about Plaintiff's inability to perform work activities.  *See* Tr. 186.

The record further reveals that no medical expert testified during the ALJ's hearing, *see* Tr. 460-82, and the record does not contain an evaluation of Plaintiff by a physician for the Ohio BDD, who provided an opinion contrary to Dr. Kahn's opinions.  Because of this and given Dr. Kahn's long-term treatment of Plaintiff, his detailed,

19

analytical, well-explained, medically based, and timely opinions about Plaintiff's chronic fatigue syndrome and its impact on her work abilities, *see* Tr. 285-88, 292-96, constitutes either overwhelming evidence of Plaintiff's disability or strong evidence where contrary evidence is weak.

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

### IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's final non-disability finding be vacated;

2. Plaintiff's case be REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. §405(g) for payment of DIB consistent with the Social Security Act; and

3. The case be terminated on the docket of this Court.


July 21, 2008

s/ Sharon L. Ovington
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Am,* 474 U.S. 140 (1985).